# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| JAIRUS PEGUES, | § | |
| | § | |
| V. | § | NO. 1:19-CV-705-LY |
| | § | |
| INTERNATIONAL ASSOCIATION | § | |
| OF MACHINISTS AND AEROSPACE | § | |
| WORKERS, et al. | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO: THE HONORABLE LEE YEAKEL
UNITED STATES DISTRICT JUDGE

Before the Court are Plaintiff's Motion for Remand (Dkt. No. 14) and Defendant's Opposition (Dkt. No. 15). The District Court referred the above to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. §636(b) and Rule 1(c) of Appendix C of the Local Court Rules.

## I. BACKGROUND

Jairus Pegues worked as a Ramp Agent for United Airlines at Austin-Bergstrom International Airport. The International Association of Machinists and Aerospace Workers (IAMAW) is the certified collective bargaining representative of United's Ramp Agents pursuant to majority vote of employees in an election conducted in accordance with the procedures outlined in the RLA. *Matter of the Representation of Employees of United Airlines/Continental Airline Fleet Service Employees*, 38 NMB 285, 2011 WL 3539643 (2011) (certifying IAM as the exclusive bargaining representative of Ramp Agents at United under the RLA). Defendant Jerome Pelitera is an IAMAW local lodge representative.

United and the IAMAW negotiated a collective bargaining agreement governing the terms and conditions of employment for United Ramp Agent employees. Pursuant to Article 8.B of the agreement, employees are not required to become members of the Union, but they are required to pay "service fees" or "agency fees" to the Union equal to monthly membership dues. Additionally, nonmember agency fee payers may also become "dues objectors" and pay a reduced fee rate for expenses only directly related to collective bargaining matters. On September 9, 2018, United terminated Pegues for failing to pay service fees to the IAMAW, as required by the union security provision of the contract. It is undisputed that Pegues did not pay these fees and was terminated for failure to pay the fees. Pegues essentially complains about the administration and enforcement of the union security clause contained in the CBA between IAMAW and United Airlines.

Pegues originally filed suit in the 53rd Judicial District Court of Travis County, Texas. (Dkt. No. 1-1). In his state court Original Petition, Pegues complained about his termination from United. Relying on *Janus v. American Federation of State, County, and Municipal Employees, Council 31*, –––– U.S. ––––, 138 S. Ct. 2448 (2018),[1] Pegues argues that the union security clause in the collective bargaining agreement between United and the IAMAW is unenforceable and therefore various actions taken because of his objector status were illegal under state law. He makes claims for unlawful interference with his right to work because of union status pursuant to Texas Labor Code §§ 101.301(a) & (b), 101.052, and 101.153; and for malice pursuant to Texas Civil Practice & Remedies Code § 41.001(7).

---

[1] In *Janus*, the Supreme Court held that public-sector unions may not deduct agency fees or "any other payment to the union" from the wages of nonmember employees unless the employees waive their First Amendment rights by "clearly and affirmatively consent[ing] before any money is taken from them." 138 S. Ct. at 2486. This case involves a private sector union.

Defendants removed the case to this court arguing that claims involving the application of a collective bargaining agreement, and related to a union's performance of its representational duties, are governed by the Railway Labor Act, 45 U.S.C. § 151, which preempts Pegues' state law claims. *See Kollar v. United Transp. Union*, 83 F.3d 124, 125-26 (5th Cir. 1996). Pegues moves to remand, arguing that union steward Jerome Pelitera was not joined to defeat diversity jurisdiction—despite the fact that the basis for removal was federal question jurisdiction, not diversity. Dkt. No. 14 at 6. Pegues also argues that his claims are properly brought pursuant to Texas law.

## II. STANDARD OF REVIEW

The removal statute provides two grounds for remand: (1) a defect in removal procedure; or (2) lack of subject matter jurisdiction. 28 U.S.C. § 1447(c). A remand for lack of subject matter jurisdiction is permissible at any time before final judgment, with or without a motion. 28 U.S.C. § 1447(c). A defendant may remove an action from a state court to a federal court if the action is one over which the federal court has original jurisdiction. 28 U.S.C. 1441(a). Since federal courts are courts of limited jurisdiction, absent jurisdiction granted by statute, federal courts lack the power to adjudicate claims. *See Stockman v. Federal Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). Thus, "[i]t is incumbent on all federal courts to dismiss [or remand] an action whenever it appears that subject matter jurisdiction is lacking." *Id.* Any doubt as to the district court's jurisdiction must be resolved in favor of remand. *Bosky v. Kroger Tex., L.P.*, 288 F.3d 208, 211 (5th Cir. 2002).

Federal subject matter jurisdiction is limited to cases that either "aris[e] under the Constitution, laws or treaties of the United States" or involve matters where the amount in controversy exceeds $75,000, exclusive of costs and interest, and diversity of citizenship exists. 28 U.S.C. §§ 1331, 1332. As noted earlier, the defendants removed the case to federal court based on

3

the assertion that the suit raises a federal question. To determine whether a case "arises under" federal law, courts apply the well-pleaded complaint rule. *See Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 808 (1986). An action is said to "arise under" federal law within the meaning of § 1331, if a federal question is an ingredient of the action or when the allegations involve a disputed question of federal law or require resolution of a substantial federal question. *See Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 366 (5th Cir. 1995) (citing *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 12 (1983)). An exception to this rule, however, provides that when Congress has so completely preempted a particular area of law "any civil complaint raising this select group of claims is necessarily federal in character." *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 107 S. Ct. 1542, 1546 (1987).

### III. ANALYSIS

Defendants argue that Pegues' claims are wholly preempted by federal law, and thereby present a federal question supporting jurisdiction. Pegues fails to respond to this argument and instead argues that complete diversity is lacking, as both Plaintiff and Pelitera are Texas citizens, and Pelitera is properly joined. As discussed, Defendants do not base their claim that federal jurisdiction exists in this case on diversity jurisdiction, but rather contend that the suit raises federal questions. *See, e.g.* Dkt. No. 1 at 6. The Court agrees, and finds that under the applicable law it has federal question jurisdiction over this cause of action.

Congress's intention in passing the Railway Labor Act, 45 U.S.C. § 151, *et seq.*, "was to promote stability in labor-management relations by providing a comprehensive framework for resolving labor disputes." *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252 (1994) (citing *Atchison, Topeka & Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 562 (1987) ); *see also* 45 U.S.C.

4

§ 151a. The Railway Labor Act "governs employment relations in the airline industry, including those between employees and employee unions." *Simmons v. Local 565 Air Transport Div., Transp. Workers Union*, 2010 WL 2473840, *2 (N.D. Tex. June 16, 2010). In 1951 Congress amended the RLA by adding a section allowing for the parties to negotiate a union shop provision:

> Notwithstanding any other provisions of this chapter, or of any other statute or law of the United States, or Territory thereof, or of any State, any carriers . . . and a labor organization . . . shall be permitted to make agreements, requiring, as a condition of continued employment, that … all employees shall become members of the labor organization representing their craft or class.

45 U.S.C. § 152, Eleventh. In 1956, the Supreme Court upheld the constitutionality of this provision. *Ry. Emps. Dep't v. Hanson*, 351 U.S. 225, 233 (1956) ("The choice by the Congress of the union shop as a stabilizing force seems to us to be an allowable one"). *Janus* did not overrule *Hanson*, but rather distinguished it on the basis that it addressed private sector collective bargaining agreements, not the public sector agreements at issue in *Janus.* 138 S.Ct. at 2458.

Pegues' main claim is that his termination for failure to pay agency fees to the IAMAW violated Texas' "right to work" laws. Dkt. No. 1-1 at 4-5. The RLA, however, preempts state right to work laws. 45 U.S.C. § 152, Eleventh; *Rwy. Emps. Dep't v. Hanson*, 351 U.S. 225, 233 (1956) (in passing the RLA Congress properly used its power to supersede state right to work laws). And where a claim is preempted by the RLA, the case is removable to federal court. *See Anderson v. Am. Airlines, Inc.*, 2 F.3d 590, 594 (5th Cir. 1993) ("If either [the RLA or the Aviation Act] completely pre-empt[s] [Plaintiff's state-law] claim, federal question jurisdiction exists, and removal of this case was proper."). Moreover, "[a]s a general rule, disputes arising out of grievances or out of the interpretation or application of a CBA are preempted by the RLA's mandatory arbitration provisions." *Kollar*, 83 F.3d at 126 (citing *Hirras v. National R.R. Passenger Corp.*, 44 F.3d 278,

280 (5th Cir. 1995)). Pegue's claims are preempted if they are "dependent on the interpretation of a CBA." *Hawaiian Airlines*, 512 U.S. at 262.

Here, Pegues complains that he was harassed and ultimately terminated for his failure to join the IAMAW and for his failure to pay service fees to the union. He asserts he filed a harassment complaint with the IAMAW on July 24, 2018. These are disputes arising out of the application of the CBA to Pegues, who consistently refused to pay service fees as required by the CBA. Thus, these claims are "dependent on the interpretation of a CBA" and preempted by the RLA. Pegues also complains that Peliteras, both in his individual capacity and in his capacity as IAMAW union representative, treated Pegues poorly. Claims regarding the IAMAW's representational duties are preempted by federal law. *Vaca v. Sipes,* 386 U.S. 171, 177 (1967); *Kollar,* 83 F.3d at 125-26. "Because federal law completely governs the duties owed by an exclusive collective bargaining representative to those within the bargaining unit, and because this manifestation of congressional will so closely parallels Congress' intentions with regard to section 301 . . . a district court possesses federal question jurisdiction when a complaint, though garbed in state-law raiment, sufficiently asserts a claim implicating the duty of fair representation." *BIW Deceived v. Local S6, Indus. Union of Marine & Shipbuilding Workers of Am.*, 132 F.3d 824, 831-32 (1st Cir. 1997) (LMRA case).

Accordingly, Defendants removal of the case to this Court was proper pursuant to 28 U.S.C. § 1441(a) because the RLA preempts Pegues' state law claims, creating federal question jurisdiction over Pegues' claims. 28 U.S.C. § 1331.

## IV. RECOMMENDATION

Based upon the foregoing, the undersigned **RECOMMENDS** that the District Court **DENY** Plaintiff's Motion for Remand (Dkt. No. 14).

## V. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *Battles v. United States Parole Comm'n,* 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

SIGNED this 10th day of December, 2019.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE